**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| MARY BELL, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:03-CV-2650-B |
| ) | |
| BANK OF AMERICA, ) | |
|     Defendant. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This is an employment discrimination suit brought pursuant to Title VII, Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2000e-17. The District Court referred Defendant Bank of America's ("BOA's") Motion for Summary Judgment ("Motion") to the United States Magistrate Judge for Findings, Conclusions, and Recommendation. The Court has considered BOA's Motion, Brief, Appendix, and Reply and Plaintiff Mary Bell's ("Bell's") Brief in Opposition and Appendix. The Court finds that Bell has not shown that a genuine issue of material fact exists with respect to any of her claims in this suit and recommends that the Court grant BOA's Motion in its entirety.

**I.    BACKGROUND FACTS**[1]

BOA employed Bell, an African American female, as an investment administrator in BOA's Community Development Financial Institution ("CDFI") Department. (BOA's App. 7-8, Bell's Depo. 16-17.) The CDFI Department makes loans to small businesses and to non-profit organizations who focus on helping individuals obtain affordable housing. (BOA's App. 0009,

---

[1] Unless otherwise noted, the background facts are undisputed by the parties and are taken from the parties' summary judgment briefs and appendixes. ("BOA's Br.," "Bell's Br.," "BOA's App.," and "Bell's App.") References are also made to Bell's deposition and to the affidavit of Bell's supervisor, Larry West. ("Bell's Depo." and "West Aff.")

Bell's Depo. 37.) The CDFI Department was in the Community Development Equity Section of Community Development Banking until a reorganization occurred late in 2003.[2] (BOA's App. 0010, 0097, Bell's Depo. 38, West Aff. ¶ 3.) As part of the reorganization, the CDFI Department became part of BOA's Charitable Investments Group and Foundation Team. (*Id*.) The Department later changed its name to Program Related Investments. (BOA's App. 0097, West Aff. ¶ 3.)

Part of Bell's job as an investment administrator was to provide administrative support for the CDFI Department's clients. (BOA's App. 0017, Bell's Depo. 45.) BOA employed two investment administrators in Dallas, Bell and Janice Barnhart ("Barnhart"), a Caucasian female. (BOA's App. 0007-8, 0017, 0062, Bell's Depo. 16-17, 45, 111.) BOA assigned certain clients to Bell and others to Barnhart. (BOA's App. 007-8, Bell's Depo. 16-17, 45.) The investment administrators' responsibilities included maintaining an updated database of information and ensuring that interest payments were posted to accounts. (BOA's App. 0018, Bell's Depo. 46.)

Larry West, Assistant Vice President and Senior Investment Administrator, supervised Bell and Barnhart from his office in Sarasota, Florida. (BOA's App. 0010, 19, 98, Bell's Depo. 38, 50, West Aff. ¶ 4-5.) West's supervisor was Mary Schultz ("Schultz"), Senior Vice President and Community Development Equity Manager. (BOA's App. 0019, 0098, West Aff. ¶ 5, Bell's Depo. 50.) She was located in Sarasota, Florida. (*Id*.) West provided assistance to Bell and Barnhart by telephone. (BOA's App. 0019, Bell's Depo. 50.) Bell talked to West daily. (BOA's App. 0019, Bell's Depo. 50.) Bell felt that she worked more independently than Barnhart and that Barnhart

---

[2] Bell's unverified claim is that the actual transfer date of the CDFI Department to the Bank's Charitable Investment Group and the Foundation Team took place on or about the fourth week in August 2003. She claims the elimination of her position in Dallas took place over thirty days later. (Bell's Br. 4.) She does not dispute that BOA reorganized and eliminated her Dallas position and that her position in Dallas was never refilled.

2

called West with questions more frequently than Bell did. (BOA's App. 0019-20, Bell's Depo. 50-51.)

Bob Bidel ("Bidel"), Senior Vice President and Senior Investment Manager in the CDFI Department, who was located in Dallas, was also available to assist Bell and Barnhart. (BOA's App. 0010-11, 98, Bell's Depo. 38-39, West Aff. ¶ 5.) Technically, Bidel did not supervise Bell and Barnhart, but he assisted them because he was the only CDFI officer in Dallas at the time. (BOA's App. 0098, West Aff. ¶ 5.) Schultz supervised Bidel, as well as West. (BOA's App. 0098, West Aff. ¶ 5.)

On October 2, 2003, Bidel told Bell that BOA was eliminating Bell's and Barnhart's positions in Dallas and terminating their employment. (BOA's App. 0015-17, Bell's Depo. 43-45.) BOA's elimination of the investment administrator position was part of the restructuring in which the CDFI Department was moved from Community Development Banking to the Charitable Investments Group and Foundation Team. (BOA's App. 0007, 0016, 0087, 97-98, Bell's Depo. 16, 44, West Aff. ¶¶ 3-4.)

Bell and Barnhard stopped working for BOA on October 2, 2003, but BOA allowed them to use their offices and BOA's phones and computer until October 31, 2003. (BOA's App. 0016-17, Bell's Depo. 44-45.) BOA paid Bell through November 3, 2003. (*Id.*)

When Bell and Barnhart heard rumors about a possible restructuring that would involve the elimination of their jobs, Barnhart began looking for a new position with BOA. (BOA's App. 0012-14, Bell's Depo. 40-42, 136.) Bell was not eligible for transfer to another position under BOA's guidelines because her performance had not been satisfactory. (BOA's App. 0014, 0021, Bell's Depo. 42, 55.) Nevertheless, BOA made an exception to its transfer policy because Bell's position

3

was being eliminated. (BOA's App. 0021, Bell's Depo. 55.) BOA told Bell that she was eligible for rehire and could apply for other jobs within BOA. (*Id.*) BOA also offered Bell a severance package through its Corporate Severance Program. (BOA's App. 0006-7, 0087, Bell Depo. 15-16, Bell's Oct. 31, 2003 letter.)

After BOA terminated Bell and Barnhart, their investment administrator positions no longer existed. (BOA's App. 0008, Bell's Depo. 17.) No one was hired to replace them. (*Id.*) BOA created one senior investment administrator position in Sarasota, Florida, in addition to the senior administrator position that was already there. (BOA's App. 008, 0014-15, 98, Bell's Depo 17, 42-43, West Aff. ¶ 6.) The senior administrator positions are at a higher level than the former positions.[3] (*Id.*) Before Bell's and Barnhart's Dallas positions were eliminated, West supervised them from Florida. (*Id.*) The reorganization resulted in the senior administrator positions being supervised in Florida, where the supervisor was located. (*Id.*)

## II.   **PROCEDURAL HISTORY**

Bell filed suit against BOA on October 29, 2003, alleging race discrimination in violation of 42 U.S.C. § 2000e-2(a)(1) and retaliation in violation of 42 U.S.C. § 2000e-3(a). BOA filed a Motion for Summary Judgment on December 15, 2004. Bell filed her Brief in Opposition on January 3, 2005, and BOA filed a Reply on January 18, 2005.

---

[3] Bell states in her unverified response that "Barnhart went around the 18th floor discussing the actually [sic] position with other employees and the consensus was those were our jobs with a higher level pay grade attached." (Bell's Br. 5.) Bell attempts to present hearsay evidence that "there was no pay increase above [her] and Barnhart's earnings." (Bell's Br. 5, Bell's App. 3, Memo from Exult Recruiting Solutions to Larry West re: a new hire.) Hearsay evidence does not create a genuine issue of material fact. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995). The Court will discuss this issue in more detail in its analysis of Bell's retaliation claim.

**III**.     **EVIDENTIARY OBJECTIONS**

As an initial matter, the Court addresses BOA's Objections to Bell's Summary Judgment Evidence ("BOA Obj."), filed January 18, 2005.   First, BOA requests that the Court exclude a number of Bell's documents because they have not been properly authenticated.[4] (BOA Obj. 1-2.) The Fifth Circuit Court of Appeals does not require conclusive proof of authenticity. *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 562 (5th Cir. 1998) citing, *United States v. Lopez,* 873 F.2d 769, 772 (5th Cir. 1989); *United States v. Scurlock,* 52 F.3d 531, 538 (5th Cir. 1995).  "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." FED. R. EVID. 901(a).   Next, BOA objects to two exhibits that appear to be part of Bell's Equal Employment Opportunity Commission ("EEOC") file.[5] Finally, BOA objects to a number of Bell's statements as hearsay, objects to other statements as consisting of speculation and subjective belief, and objects to still more statements as lacking a proper foundation.

Evidence on summary judgment may be considered to the extent that it is not based on hearsay or other information that is not admissible at trial. *Fowler*, 68 F.3d at 126.  Statements that are conclusory and based upon speculation will not be considered. *See Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003) (holding that unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment).     This Court will consider only competent summary judgment evidence in considering

---

[4] Defendant seeks to exclude Appendix Nos. 1-11, 13-15, 18-19, and Exhibits Nos. 6-7, 11, 13, and 23-24.

[5] Bell's statements made as part of the EEOC investigation are her Exhibit Nos. 11 and 13.

whether the District Court should grant Summary Judgment in favor of BOA. Further, this Court will give the evidence in the record the weight that it deserves. Accordingly, BOA's objections are noted and overruled for purposes of summary judgment.

## IV. ANALYSIS

Under FED. R. CIV. P. 56(c), summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *See Chaplin v. Nations Credit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002).

### A. Bell's Allegations of Racial Discrimination under Title VII

Title VII makes it unlawful for an employer to discriminate against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In her EEOC charge, Bell claimed that BOA discriminated against her on the basis of race in violation of Title VII by (1) denying her a merit pay increase for 2002, (2) providing Barnhart data input assistance two weeks before providing Bell assistance, (3) asking Bell to get a cashier's check by February 5, 2003, and giving her short notice of a closing, (4) failing to give her a phone number and instructions directly, rather than asking her to get them from Barnhart, and (5) placing a written warning in her

personnel file on March 7, 2003. In her Complaint, Bell additionally alleges that BOA discriminated against her on the basis of her race by (1) failing to give her the passwords for a website around March 31, 2003, (2) placing a customer complaint in her personnel file, (3) failing to inform her about a change in the "hierarchy,"[6] and (4) failing to give her as many "reward points" as she deserved, while giving Barnhart more "reward points" than Bell thought Barnhart deserved. She also complains that Barnhart missed a deadline for sending out client letters when Bell met the deadline.

As a preliminary matter with respect to Bell's racial discrimination claims, BOA contends that Bell has not exhausted her administrative remedies, except with respect to the five claims that were the basis of Bell's EEOC charge. Bell claims that the additional charges alleged in her complaint are not separate claims, but are support for her contention that she was treated less favorably than Barnhart. (BOA's App. 23-24, Bell's Depo. 57-58.) A Title VII action is limited in scope to the EEOC investigation that can reasonably be expected to grow out of the charge of discrimination. *Young v. City of Houston, Tex.*, 906 F.2d 177, 179 (5th Cir. 1990) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). Bell's additional claims, while not specifically addressed in the EEOC charge, are of the type that are reasonably encompassed within its investigation. Accordingly, the Court will consider all of Bell's allegations.

The elements of a prima facie case of racial discrimination are as follows: (1) the plaintiff is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse

---

[6] The "hierarchy" was the way electronic information about the CDFI Department's clients was organized and stored on BOA's computer system. (BOA's App. 98, West Aff. ¶ 9.) Bell alleges that she had to redo her work, and that she suffered feelings of frustration and aggravation. (BOA's App. 0061, Bell's Depo. 124.)

employment action, and (4) the employer gave non-members of the protected class more favorable treatment because of their race. *Daigle v. Liberty Life Ins. Co*., 70 F.3d 394, 396 (5th Cir.1995). When a plaintiff attempts to prove her racial discrimination claim by indirect evidence, as Bell does here, she must first demonstrate a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Once a plaintiff demonstrates a prima facie case, the defendant then has the burden of production to articulate a legitimate, non-discriminatory reason for its actions. *Id.* In *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003), the United States Supreme Court arguably altered the third step of the *McDonnell Douglas* test for circumstantial evidence cases with mixed-motive theories of discrimination *Boyce v. Bank of America Technology and Operations Div*., No. Civ A 3:03-CV-0770-B, 2004 WL 2545015 *4 (N.D. Tex. 2004). The Fifth Circuit has modified the third step of the *McDonnell Douglas* test accordingly. *Id.*; *see Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). To survive summary judgment under the modified *McDonnell Douglas* test, after the defendant articulates a legitimate non-discriminatory reason for its actions, a plaintiff must now produce evidence raising a fact question that either (1) the defendant's reason is not true, but is instead a pretext for discrimination, or (2) that the defendant's reason, while true, is only one of the reasons for its conduct and that racial discrimination was a motivating factor. *Id.* A plaintiff must still produce either direct or circumstantial evidence of a discriminatory motivating factor to avoid summary judgment. *Id.*

### 1. <u>Bell's Failure to Earn a Merit Pay Increase for Her 2002 Performance</u>

Bell first claims that West's decision not to give her a merit pay increase based upon her performance in 2002 was motivated by racial discrimination. (BOA's App. 0036, 0098, Bell's

Depo. 62-63, West Aff. ¶ 7.) BOA moved for summary judgment on the grounds that (1) it produced evidence of a legitimate, non-discriminatory reason for its decision, and (2) Bell has not raised a fact issue regarding pretext or a discriminatory motivating factor.

With respect to Bell's allegations regarding the pay raise, Bell's prima facie case consists of evidence that (1) she was a member of a protected class; (2) she sought a merit pay increase; and (3) she did not receive one. Bell has failed to demonstrate a prima facie case of race discrimination. Bell has not demonstrated by any competent summary judgment evidence that she was qualified for the merit pay increase. Further, the fourth element of a prima facie case is missing, i.e., she did not show that someone outside the protected class with similar qualifications received a raise. Bell attempted to meet the fourth element by claiming that West treated Barnhart, a Caucasian who held the same position, more favorably than he treated her in that he (1) helped Barnhart more than he helped Bell; (2) gave Barnhart key information that Bell had to get from Barnhart, rather than West; and (3) gave Barnhart more reward points than he gave Bell. These incidents have nothing to do with the pay raise decision, and they do not show that someone outside the protected class with similar qualifications received a pay raise.

Even if the Court assumes that Bell demonstrated a prima facie case of race discrimination, BOA has produced evidence of a legitimate, non-discriminatory reason for its actions, namely that Bell's performance in 2002 did not justify a merit pay increase. (BOA's App. 0036, 98, Bell's Depo. 78, West Aff. ¶ 7.) West discussed Bell's performance review with her in October 2002, and told her she would not get a raise for 2003. (BOA's App. 0026-28, 88-89, Bell's Depo. 62-64, Oct. 2002 PYP Form.) Bell eventually completed many of her performance goals, but more than half of the deadlines had been extended. (BOA's App. 0029, 0088-89, 98, Bell's Depo. 66, Oct. PYP

9

form). During 2002, Bell had received "red" and "yellow" ratings on her progress in meeting the goals.[7] Bell admits that by October 2002, the deadlines for four of the seven performance goals that she had completed had been extended. (BOA's App. 29, Bell's Depo. 66.) Bell herself notes her unsatisfactory performance and, inexplicably, wonders why BOA failed to terminate her for her unsatisfactory performance. (Bell's Br. 6.)

BOA articulated a legitimate, non-discriminatory reason for its decision to deny Bell a merit pay increase. Accordingly, Bell must now produce evidence that either (1) raises a fact issue regarding the veracity of BOA's reason, or (2) raises a fact issue which demonstrates that, regardless of BOA's stated reason, race was still a motivating factor in BOA's decision. *Rachid*, 376 F.3d at 312.

Bell believed that West was a biased supervisor who lacked experience. (Bell's Br. 7.) She asserted that she was better at her job than West had been when he held the same position, and that West thus felt threatened by her. (*Id*.) Bell also thought that West was biased against her because of her race, although he never made any comments to her about her race and never told her that her low performance scores were based upon her race. (BOA's App. 33, Bell's Depo. 75.)

Bell contends that West once made a remark that led her to believe that he was biased against her because of her race. (*Id*.) The remark involved the Senior Vice President Bidel's having received a trip to Disney World in Florida. (*Id*.) Bell states that West made the assumption that Bell and her family could not afford to go to Disney World. (*Id*.) Bell admits that the remark was facially neutral. (BOA's App. 34, Bell's Depo. 76.) Nevertheless, Bell interpreted his comment as

---

[7] "Red" meant that an employee was in danger of not achieving the goal, and "yellow" meant that the employee was at moderate risk of not achieving the goal. (BOA's App. 28, Bell's Depo. 65.)

10

referring to her race. (*Id*.) Bell admits that she never complained to West's supervisor or anyone else about West's alleged racial discrimination. (BOA's App. 35, 48, Bell's Depo. 77, 93.)

"Stray remarks with no connection to an employment decision cannot create a fact issue regarding discriminatory intent and are insufficient to defeat summary judgment." *Scales v. Slater,* 181 F.3d 703, 712 (5th Cir. 1999). Here, there is no evidence of when and under what circumstances the remark was made. The alleged remark by West has no demonstrable connection to Bell's performance evaluation, and as such does not create a genuine issue of fact.

Bell claims that between March 25, 2002, and August 16, 2002, West changed the "Metrics Field" on the "Planning Your Performance" ("PYP") Form in connection with Bell's performance reviews. (Bell's Br. 7-8.) The "Metrics Field" is the column of the form that gives specific information about each of the performance goals. Bell does not contend that West changed any of her deadlines or actual completion data. Rather, Bell felt as if her completion of the performance goals in October 2002 should have shielded her from West's consideration of her poor performance earlier in the year in determining whether she received a raise for her 2002 performance. (BOA's App. 20, Bell's Depo. 51.) Bell's subjective belief is not competent summary judgment evidence. Bell has not shown that West changed the "Metrics Field" only for her and not for Caucasian employees, and she has failed to show that his making the descriptions of the goals more specific made her performance rating lower. Although she alleges that "keeping her in an unsatisfactory rating" would keep her from seeking employment within the bank, the undisputed facts show that BOA waived this requirement and considered her to be eligible for rehire within BOA. (BOA's App. 0021, Bell's Depo. 55.)

Bell also contends that West treated her less favorably than Barnhart (1) by providing

11

Barnhart data input assistance two weeks before providing assistance to Bell, (2) by telling Bell to obtain a phone number and instructions from Barnhart rather than giving them to her directly, and (3) by giving Barnhart more reward points than he gave Bell. Additionally, she alleges that Barnhart missed a deadline for sending out client letters when Bell met the deadline. Plaintiff has presented no competent summary judgment evidence in support of these allegations, but assuming that she had done so, they would not raises a fact issue regarding the veracity of BOA's reason for not giving her a merit pay increase for 2003, nor would they raise a fact issue that, regardless of BOA's stated reason, race was still a motivating factor in its decision.

Taking the facts most favorably to Bell, and assuming that Bell made a prima facie case of discrimination, BOA has shown a legitimate non-discriminatory reason for failing to give Bell a merit pay increase based upon her 2002 performance, i.e., her failure to meet her performance goals in a timely manner. Bell has failed to rebut the legitimate non-discriminatory reason. Accordingly, BOA should be granted summary judgment on Bell's claim that BOA racially discriminated against her by failing to give her a merit pay increase based upon her 2002 performance.

**2**. **Bell's Other Claims of Discrimination**

Bell claims that BOA discriminated against her because of her race by (1) providing Barnhart data input assistance two weeks before providing Bell assistance, (2) asking Bell to get a cashier's check by February 5, 2003, and giving her short notice of a closing, (3) asking her to obtain a phone number and instructions from Barnhart rather than giving them to her directly, and (4) placing a written warning in her personnel file on March 7, 2003. Additionally, Bell alleges that BOA discriminated against her on the basis of her race by (1) failing to give her the passwords for a website around March 31, 2003, (2) placing a customer complaint in her personnel file, (3) failing

to inform her about a change in the "hierarchy," and (4) failing to give her as many "reward points"[8] as she deserved, while giving Barnhart more reward points than Bell thought Barnhart deserved. She also complains that Barnhart missed a deadline for sending out client letters when Bell met the deadline.

Title VII addresses only employers' ultimate employment decisions, not every decision that might have some tangential effect upon the employee. *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995). "Ultimate employment decisions" include such acts as hiring, granting leave, discharging, promoting, and compensating an employee. *Dollis*, 77 F.3d at 782. Bell's other claims of discrimination do not address ultimate employment decisions. Accordingly, the District Court should grant BOA summary judgment with respect to Bell's other claims.

　　B.　**Bell's Allegations of BOA's Retaliation**

Bell contends that BOA's termination of her employment on November 3, 2003, was in retaliation for her having filed an EEOC Charge in March of 2003. An employee has engaged in protected activity when he has "opposed any practice made an unlawful practice under [Title VII]," or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show: (1) she engaged in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and

---

[8] Management could delegate "reward points" to employees for contributions that they made to the company. (BOA's App. 72, Bell's Depo. 124.) The employees could use the reward points to buy necklaces, backpacks, and other items. (BOA's App. 74, Bell's Depo. 126.) Bell admitted that she and Barnhart got reward points for different contributions, and that she did not know of any instance where they did identical work and received a disparate amount of points. (*Id.*)

the adverse action. *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). A plaintiff need not prove that the protected activity engaged in was the sole factor for the adverse employment action in order to establish a causal connection between the two. *Id.* at 305.

The *McDonnell Douglas* framework applies to retaliation claims as well as to discrimination claims, so that once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to offer legitimate, non-discriminatory reasons for the adverse employment action. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998); *Long,* 88 F.3d at 304. To survive summary judgment under the modified *McDonnell Douglas* test once the employer has shown a legitimate non-retaliatory reason for its action, a plaintiff must then produce evidence raising a fact question that (1) the employer's reason is not true, but is instead a pretext for retaliation, or (2) the employer's reason, while true, is only one of the reasons for its conduct and that retaliation was a motivating factor. *Id.*

For purposes of this summary judgment analysis, the Court will assume the existence of a prima facie case.[9] The burden of producing evidence then shifts to BOA to show a legitimate non-retaliatory reason for Bell's termination. Bell and Barnhart were terminated as a result of BOA's elimination of the investment administrator positions in Dallas. (BOA's App 98, West Aff. ¶ 4.) This was part of a reorganization in which the CDFI Department became part of BOA's Charitable investments Group and Foundation Team. (BOA's App 97, West Aff. ¶ 3.) After BOA terminated

---

[9] The Court is not convinced that Bell has made out a prima facie case. Both Bell's position as investment administrator and that of the Caucasian investment administrator were eliminated. Her Caucasian counterpart, Barnhart, had not engaged in protected activity. Thus Bell has not shown a causal connection between the elimination of the position in Dallas and her filing of the EEOC Charge. However, out of an abundance of caution, the Court will address Bell's arguments on pretext and motivating factor.

Bell and Barnhart, no one was hired for the positions in Dallas that they once held. (BOA's App 98, West Aff. ¶ 6.) An employer's decision to eliminate a job position has been repeatedly recognized as a legitimate, non-discriminatory reason for terminating an employee. *E.E.O.C. v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996); *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 150 (5th Cir. 1995). BOA has shown a legitimate non-retaliatory reason for terminating Bell.

Bell must now produce evidence that either (1) raises a fact issue regarding the veracity of BOA's reason, or (2) raises a fact issue that, regardless of BOA's stated reason, retaliation was still a motivating factor in BOA's decision. *Rachid*, 376 F.3d at 312. Bell does not dispute that the investment administrator positions that she and Barnhart once held no longer exists in Dallas and have not been refilled. (BOA's App. 7, Bell's Depo. 16.) Bell states that her position was not eliminated until thirty days after the actual date that the CDFI Department was moved. (Bell's Br. at 4.) However, she offers no competent summary judgment evidence in support of this contention. Even if this is true, it does not raise a genuine issue of material fact. Bell readily admits that her position was eliminated during a reorganization. (BOA's App. 7, 15-17, Bell's Depo. 16, 43-45.) A reorganization does not occur overnight, and it is immaterial whether BOA eliminated her position first or moved the CDFI Department first.

Bell next questions BOA's business reasons for the reorganization. (Bell's Br. 4.) Courts may not second guess business decisions. *See Walton v. Bisco Indus. Inc.*, 119 F.3d 368, 372 (5th Cir. 1997.) Whether an employer's decision was "the correct one, or the fair one, or the best one" is not a question for the jury. *Sauer v. ICI Paints in N. Am.*, 44 F. Supp. 2d 827, 829 (W.D. Tex. 1999); *see also Brown v. CSC Logic, Inc.*, 82 F.3d 651, 657 (5th Cir. 1996) (finding evidence that

15

"merely question [ed]" the prudence of the employer's methods to be insufficient). Accordingly, Bell's argument regarding BOA's business reasons does not raise a material fact issue.

Bell also attempts to prove that BOA's senior investment administrator positions in Florida are not actually at a higher level than the investment administrator position that she and Barnhart held in Dallas. (Bell's Br. 5.) Even if Bell had presented competent summary judgment evidence of this proposition, which she did not do, the level of the position in Florida is immaterial. Whatever the level of the positions, they were moved to Florida where the supervisor of the positions had been stationed while the positions were in Dallas. Bell did not dispute that the positions no longer existed in Dallas. This argument also fails.

Bell contends that if BOA had followed its own guidelines, it would have terminated her for poor performance. (Bell's Br. 6.) The Court does not understand Bell's reasoning. Termination for performance issues is also a legitimate business reason for termination. *See, e.g., Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) (finding legitimate, non-discriminatory reason based on performance issues). Bell seems to be arguing that her unsatisfactory ratings were unjust, claiming that she controlled over two thirds of the CDFI Portfolio and that she managed fifty-two relationships compared to Barnhart's forty-one relationships. (Bell's Br. 6.) She also points out that she received a leadership award from Ken Lewis, CEO and President of BOA. Bell's performance is not a material issue with respect to her termination. It remains undisputed that both Bell and Barnhart were terminated and their investment administrator positions eliminated in Dallas as a result of BOA's restructuring. Bell has not raised a fact issue with respect to pretext or retaliation as a motivating factor regarding BOA's decision to eliminate Bell's and Barnhart's positions in Dallas as investment administrators.

16

V.   **CONCLUSION**

The evidence as a whole, taken most favorably to Bell, would not allow a jury to infer that an actual reason for BOA's failure to give Bell a merit pay increase for the year 2003 was racial discrimination. Further, under the same standard, the evidence would not allow a jury to infer that a reason for Bell's termination was retaliation for her EEOC Charge.

VI.   **RECOMMENDATION**

This Court recommends that the District Court Grant Summary Judgment in favor of BOA on Bell's Title VII claims for racial discrimination and retaliation.

**IT IS SO RECOMMENDED**, June 14, 2005.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE